UNITED STATES, Appellee,

v.

Airman First Class Mark D. GAMBINI,
U. S. Air Force, Appellant.

No. 40,505.

ACM 22708.

U. S. Court of Military Appeals.

Aug. 9, 1982.

For Appellant: *Captain Willard K. Lockwood* (argued); *Colonel George R. Stevens* (on brief).

For Appellee: *Captain Michael J. Hoover* (argued); *Colonel James P. Porter* (on brief).

Opinion of the Court

FLETCHER, Judge:

Appellant pleaded guilty to the wrongful possession with intent to distribute and the wrongful sale of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was found guilty of these two offenses by the military judge in accordance with his pleas. For these offenses and others,[1] appellant was sentenced on December 7, 1979, to a bad-conduct discharge, confinement at hard labor for 4 years, total forfeitures, and reduction to airman basic. The convening authority approved this sentence. The United States Air Force Court of Military Review, on the basis of other errors at trial not pertinent to this appeal, reassessed the sentence and approved it except for reducing the confinement at hard labor by one year. 10 M.J. 618 (1980).

---

1. Appellant, contrary to his pleas, was also found guilty of other offenses by the members of this court-martial: one specification of willful disobedience of a direct command of his superior commissioned officer not to enter a **female barracks at Zweibruecken Air Base, Ger-** many, and one specification of failing to obey a lawful base regulation not to enter this same female barracks at a time outside normal visiting hours, in violation of Articles 90 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 890 and 892, respectively.

This Court granted review [2] on the question:

WHETHER THE CROSS–EXAMINATION OF SPECIAL AGENT BANCROFT [BY TRIAL COUNSEL] EXCEEDED THE SCOPE OF DIRECT EXAMINATION AND ELICITED INADMISSIBLE EVIDENCE OF UNCHARGED MISCONDUCT.

We hold that this cross-examination by trial counsel was erroneous as a matter of law and substantially prejudiced appellant. Article 59(a), UCMJ, 10 U.S.C. § 859. *Cf. United States v. Donnelly*, 13 M.J. 79 (C.M.A.1982).

As indicated above, appellant pleaded guilty to two drug offenses which occurred on August 24, 1979. His guilt to these offenses was established during a providence inquiry conducted by the military judge partially on the basis of a stipulation of fact relating to the charged offenses. This stipulation of fact details the surveillance of appellant by agents of the Air Force Office of Special Investigations (OSI) on August 24, 1979, and their controlled purchase of drugs from him on that date.

Defense counsel opened his case on sentencing by calling OSI Special Agent Edward Bancroft of Zweibruecken Air Base, Germany. The following excerpt is from the record of trial:

### DIRECT EXAMINATION

Questions by Individual Defense Counsel:

Q. Mr. Bancroft, what are your present duties here at Zweibruecken?

A. My main position here is that I'm here on a counterpush slot, drug investigations.

Q. All right. And in the course of that investigation, did you have—in the course of your duties, I'm sorry, did you have occasion to run across Airman Gambini?

A. Yes, I did.

Q. Okay. Were you, in fact, involved in his apprehension for the sale of marijuana on the 24th of August?

A. Yes, sir.

Q. All right. Now, did Airman Gambini, at any time, did he make a statement to you as far as the sale and possession of hash?

A. An oral statement, yes, sir.

Q. All right. And in that statement, did he admit the fact that he possessed and sold hash?

TC: Objection. It is leading, Your Honor.

IDC: What did he say in that statement?

MJ: Sustained. Please try to avoid leading your own witness, counsel.

IDC: All right, sir.

Continued Direct Examination by Individual Defense Counsel:

Q. What did he say in that statement, sir?

A. He advised that the hashish that he was apprehended with came—originated from an Airman on base by the name of Pace.

Q. Okay. So—and did you request that he cooperate with the Government as far as your investigations and activities were concerned?

A. Yes. Part of the intent in speaking to him was the possibility of going into an operational phase.

Q. All right, sir. And did he, in fact, cooperate with you and provide you information?

A. Yes, he did.

Q. All right. And was this information of value to you?

A. In an intelligence aspect only.

IDC: Okay. All right. I have no further questions, Your Honor.

TC: Your Honor, before proceeding further, I'd like a session out of the hearing of the court members, please.

MJ: Very well. If you'll excuse us, gentlemen.

**2.** The Court of Military Review set aside the findings of guilty of Additional Charge II (the violation of Article 92). 10 M.J. 618, 620. After further consideration of the specified issue concerning the applicability of footnote 5 of paragraph 127c, Manual for Courts-Martial, United States, 1969 (Revised edition), to the present case (11 M.J. 173), we find the question improvidently specified and vacate it.

(The court members withdrew from the courtroom.)

ARTICLE 39(a) SESSION

(An Article 39(a), 10 U.S.C. § 839(a) session was called to order at 1532, 6 December 1979, attended by the military judge, trial counsel, assistant trial counsel, individual defense counsel, accused, defense counsel, and reporter, and witness, Mr. Bancroft.)

MJ: Trial counsel?

TC: Your Honor, I've asked for this 39(a) session because I would like to get into some areas that I think have been opened up, but I would like to give the court an opportunity to rule on them first. I would like, first, to ask Mr. Bancroft what other information was related to him by Airman Gambini in the giving of that statement. Furthermore, I would like to ask Special Agent Bancroft concerning Airman Gambini's later cooperation with the OSI. Just to aver to the court, generally, I expect Mr. Bancroft will relate a considerable amount of information given to him by Airman Gambini concerning Airman Gambini's own drug dealings over a course of approximately nine months prior to the date of that interview.

Additionally, Special Agent Bancroft, I believe, will testify that based upon the representations on the date of that interview, he tried to go operational with Airman Gambini and, as a matter of fact, he even contacted his district, got an okay, got an authorization to spend $800.00 in throw-away money and then later, Airman Gambini declined to assist as he said he was going to originally.

I would like to get into all those areas of information.

MJ: Defense?

IDC: Sir, I believe I did not open the door as to other drug dealings of Airman Gambini. I believed that, again, we're going to get into areas of uncharged misconduct.

MJ: Did you say that you believe that you did or that you did not?

IDC: Did not. I believe that I did not open that door, no. I don't know what the probative value at this point is to bring in uncharged misconduct. I mean the point at issue is: Did he cooperate and did he assist, as a matter of fact. I have no doubt that this was given under confidentiality, but, of course, that is up to the witness to decide, I suppose, whether he is going to testify to that or not.

MJ: I don't understand that last statement.

IDC: Well, that probably has no legal basis to deny or to admit anything on that basis. I'll withdraw that.

MJ: Is it true that you did ask questions of this witness concerning the same statement that trial counsel wants to pursue the total contents of?

WIT: Yes, sir.

MJ: I'm asking that of the defense counsel.

WIT: Oh.

IDC: Sir, is it true that what? I'm sorry. I thought you were asking him too.

MJ: This statement that you inquired into of the witness that is on the stand—

IDC: Yes, sir.

MJ: Is this the same statement which the trial counsel now wants to go into in more detail as to what the other contents of that statement are?

IDC: The only statement I really had knowledge of was the fact that he had said that the hash that he had that he had received from this other individual that Mr. Bancroft named. That is the only knowledge I have of the statement that he gave—the oral statement. I do know—and what I asked him was: Did he give him information about drug dealings on the base, intelligence on other drug dealings on the base.

MJ: Mr. Bancroft, you told us about an interview with the accused.

WIT: Yes, sir.

MJ: And you told us that the accused named the source of the hashish with which he was apprehended.

WIT: Yes, sir.

MJ: In that same interview, did he detail other drug involvement of himself?

WIT: Yes, sir.

MJ: Did he indicate that he would cooperate with you in drug investigative activities?

WIT: Yes, sir.

MJ: Did he later change his mind as to that?

WIT: Yes, sir.

MJ: I'm going to allow you to proceed as you requested, trial counsel.

TC: Thank you, Your Honor.

IDC: Sir, may I say one other thing? The issue here and the question went to his cooperation. Now, as far as him asking about did he later decline to cooperate, which tends to negate that part of it, I can certainly understand that. But I can't understand how the door could have been opened to him testifying to a bunch of uncharged misconduct going into play. This is not on the merits. It's certainly not a statement against interest. It doesn't have anything to do with the charges that we're talking about. It certainly doesn't explain or—it certainly doesn't explain the charge.

MJ: It would certainly be part of his cooperation though, wouldn't it?

IDC: It would be part of his cooperation as far as—

MJ: —his forthrightness is concerned?

IDC: Sir, may I ask that he be limited then to a general statement that he did, in fact, then admit other drug dealings that he had made, without specifics?

MJ: I'm going to allow the trial counsel to walk through the door you opened, counsel.

IDC: Then I object, Your Honor.

MJ: The objection is overruled. Bring back the members of the court.

Trial counsel then proceeded to cross-examine Special Agent Bancroft as to the remainder of the oral statement given by appellant on August 29, 1979. He testified that appellant further admitted to an extensive course of drug dealings on base. In particular, he stated that appellant admitted to two transactions for hashish in August 1979, four separate hashish transactions earlier that year, several purchases and sales of cocaine as well as the purchase of Mandrex. The military judge in his instructions on sentence informed the members that they may consider the testimony of Agent Bancroft concerning appellant's drug involvement as a factor lessening the evidence the defense introduced to mitigate his sentence.

———————

 Evidence of uncharged misconduct is a matter which is not lightly treated in the military justice system for the purposes of findings or sentence. During the findings portion of a court-martial, the Government may not introduce such evidence of bad character to show that an accused was disposed to commit the charged offense. *See* paras. 138*f* and *g*, Manual for Courts-Martial, United States, 1969 (Revised edition). During the sentencing portion of court-martial, the Government likewise may not introduce such bad-character evidence to show that the accused as a repeated offender deserves a severe punishment. *See* para. 75*b*, Manual, *supra; United States v. Boles*, 11 M.J. 195, 199 (C.M.A. 1981). Such rules of evidence formulated by the President reflect a realistic concern that such evidence has a strong "tendency to arouse undue prejudice" in the court against an accused, "confuse and distract" the court from the issues before it, "engender time-consuming side issues and ... create a risk of unfair surprise." *McCormick's Handbook on the Law of Evidence* § 186 (2d ed. 1972).

 Evidence of uncharged misconduct nonetheless may be introduced by the Government at a court-martial where it has a substantial value to prove some fact in the case other than one to be inferred from the accused's disposition. *E.g.,* paras. 138*g* and 75*c*, Manual, *supra; but see United States v. Krewson*, 12 M.J. 157 (C.M.A. 1981). Moreover, where the defense has first introduced evidence that an accused has not committed prior acts of misconduct, the Government may introduce evidence that he did commit such acts by means of cross-examination or in rebuttal. *See* paras. 138*f* and *g* and 75*e*, Manual, *supra.*

Trial counsel indicated that he believed defense counsel's direct examination of Agent Bancroft opened the door for his cross-examination of this witness concerning appellant's earlier history of drug dealing. He particularly argued that reference to a portion of appellant's oral statement by defense counsel in his questions and the witness in his answers now permitted him to cross-examine this witness on the remainder of the oral statement including the admissions to uncharged misconduct. He cited no authority, civilian or military, for his argument.

■ Cross-examination of a defense witness by trial counsel is a matter of right and to a certain extent it is exploratory. Such cross-examination, however, "should, in general, be limited to the issues concerning which the witness has testified on direct examination and the question of his credibility." Para. 149b(1), Manual, supra. The scope of cross-examination in military practice must therefore, be considered "restrictive." See McCormick, supra, § 21.

■ An exception to the "restrictive" type rules of cross-examination which is recognized in some civilian courts is "that where part of a . . . conversation has been revealed on direct [examination], the remainder may be brought out on cross-examination." McCormick, supra, p. 48 (footnote omitted); see 7 Wigmore on Evidence §§ 2094, 2100 (3rd ed. 1940). Even among those jurisdictions which accept this principle of verbal completeness, disagreement exists as to whether the remainder of the conversation may be introduced if it does not tend to qualify, explain, or contradict the portion of the conversation previously introduced by the opposing party. Wigmore, supra, §§ 2113–2115, 2119. See United States v. McCorkle, 511 F.2d 477, 479 (7th Cir. 1974), cert. denied, 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975).

During the course of this appeal, no military legal authority has been brought to our attention which would permit trial counsel to cross-examine this witness on the remaining portions of this statement on the basis of this legal theory. In fact, paragraph 140a(6), Manual, supra, suggests that such cross-examination by trial counsel unrelated to the issues raised on direct examination would not be permitted. It states:

> If only part of a confession or admission or supposed confession or admission of the accused is shown, the defense by cross-examination or otherwise may introduce all other parts of the statement— which may consist of a connected series of statements—that are explanatory of, or in any way relevant to, that part.

(Emphasis added.) Therefore, in view of the restrictive nature of cross-examination in military practice and the failure of trial counsel to show the relevance of his cross-examination, his legal theory must be rejected.

■ The military judge recognized the fact that trial counsel had not adequately justified the proposed scope of his cross-examination. Therefore, he provided his own theory of admissibility to permit the Government to cross-examine this witness on the remaining portions of appellant's oral statement.[3] He held that testimony from this witness, including appellant's admissions as to acts of uncharged misconduct, was relevant to the degree of "forthrightness" with which appellant cooperated with the police. Accepting this theory of relevancy, we nonetheless conclude that the military judge erred in permitting this cross-examination.

■ The military judge's ruling on its face has a certain amount of appeal, but on closer examination its attraction fades. Arguably, the less complete, less detailed and less frank were the admissions of appellant on August 29, 1979, the less genuine his rehabilitation and the less valuable his services to the police could be considered by the members. On this basis, cross-examination could be considered relevant. See para.

---

**3.** Trial counsel made clear that his purpose in introducing this evidence of uncharged misconduct was simply to bring this information to the attention of the members in their sentencing deliberations.

137, Manual, *supra*. Yet, it must be remembered that the evidence adduced on cross-examination also established as a matter of fact that appellant committed previous acts of misconduct. As indicated earlier, the mere relevancy of such evidence is not enough to insure its admission at court-martial.

Evidence of uncharged misconduct to be admissible at court-martial must have "*substantial value* as tending to prove something other than a fact to be inferred from the disposition of the accused or is offered in proper rebuttal of matters raised by the defense." Para. 138*g*, Manual, *supra* (emphasis added). In the present case, trial counsel made clear to the military judge that appellant in his statement related a considerable amount of information concerning his prior drug activities. The witness prior to his cross-examination told the military judge that appellant had provided him detailed information. His actual cross-examination testimony demonstrated without contravention that appellant was frank, detailed, and complete in his admissions to the police. Such evidence, although conceivably of some value to the defense on the question of appellant's forthrightness, was of no value to the Government on this issue. In view of the tremendous potential for prejudice to the accused in the admission of such evidence of uncharged misconduct, especially before members, we hold the military judge erred in permitting this cross-examination and admitting the challenged testimony for this purpose. *Cf. United States v. Donnelly, supra* at 83.

A third rationale is offered to support the military judge's decision to admit the challenged cross-examination testimony of Agent Bancroft. Such evidence of uncharged misconduct is asserted by appellate government counsel to be a proper matter in rebuttal to this witness' testimony on direct examination. *See* para. 75*e*, Manual, *supra*. More particularly, the premise of the Government's rebuttal theory is that defense counsel's questions and the witness' responses created the suggestion in the minds of the members that appellant was a one-time drug offender who cooperated with the police consistent with his prior good character. Accordingly, the Government argues that it was proper for the military judge to permit trial counsel to dispel this false impression by informing the members of appellant's admissions to his prior drug offenses. We disagree.

The record of trial simply does not support the stated premise of the Government's argument. Defense counsel did not directly ask this witness whether appellant admitted any other acts of misconduct other than the charged offenses. Moreover, it was only after trial counsel objected to the leading nature of defense counsel's question and the trial judge sustained this objection that defense counsel rephrased his direct examination so as to purportedly provide such a suggestion indirectly. Additionally, the witness Bancroft did not directly or indirectly represent to the members that appellant committed no other drug offenses or that he otherwise knew appellant was a first-time drug offender. Therefore, such an inference drawn by the Government is a matter of pure speculation unsupported by the record of trial.

Assuming the direct examination of this witness created a suggestion that appellant generally had a good character, the challenged cross-examination was still not admissible. The testimony on cross-examination embraced evidence of specific acts of bad conduct by appellant. Paragraph 138*f*, Manual, *supra*, states:

> The prosecution may not, for the purpose of rebutting evidence of the accused's good character, introduce evidence of other specific offenses or acts of misconduct of the accused unless that evidence is in rebuttal of evidence introduced by the defense that other offenses or acts of misconduct were not committed.

Accordingly, the Government was limited in the type of evidence of bad character it might use to rebut any inference concerning appellant's general good character. *See* para. 138*f*, Manual, *supra*.

■ The Government in a final effort to justify the challenged cross-examination of Agent Bancroft calls our attention to the subsequent testimony of two defense witnesses, Master Sergeant Roy and Technical Sergeant Perez. It notes that these defense witnesses provided good-character testimony concerning appellant in the form of their opinions as to the quality of his job performance and his chances for a successful rehabilitation. *See* para. 75c, Manual, *supra; United States v. Donnelly, supra* at 81. Accordingly, it argues that the cross-examination of Agent Bancroft, though in a sense anticipatory, nonetheless was a proper matter in rebuttal to their testimony. *See United States v. Blau,* 5 U.S.C.M.A. 232, 17 C.M.R. 232 (1954).

Review of the testimony of these two witnesses reveals that they did not testify at length concerning specific acts of exemplary work performance by appellant. *Cf. United States v. Blau, supra* at 241, 17 C.M.R. at 241. *See also United States v. Plante,* 13 U.S.C.M.A. 266, 274, 32 C.M.R. 266, 274 (1962). Therefore, the admissibility of the evidence of the particular acts of uncharged misconduct of appellant in rebuttal to this testimony would at best be questionable under the above cited precedents of this Court. More particularly, we find the Government's after-the-fact argument inconsistent with the President's express rules for the provisional admission of evidence as provided in paragraph 137, Manual, *supra.* If the Government intended to belatedly justify its cross-examination of Agent Bancroft in this manner, it should have followed the proper procedure to accomplish this end. *See* Article 36, UCMJ, 10 U.S.C. § 836.

The decision of the United States Air Force Court of Military Review is affirmed as to findings, but reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for reassessment of the sentence in light of the holding in this case.

Chief Judge EVERETT and Judge COOK concur.