**189**

UNITED STATES, Appellee,

v.

Randy L. LAPEER, Sergeant, U.S. Air Force, Appellant.

No. 59,080.

ACM 26044.

U.S. Court of Military Appeals.

June 16, 1989.

For Appellant: *Captain Paul M. Danko-vich* (argued); *Colonel Richard F. O'Hair* (on brief); *Colonel Leo L. Sergi* and *Major William J. Reichart.*

For Appellee: *Major Carole W. Hanson* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial with members, which convened at Clay Kaserne, Berlin, Federal Republic of Germany. He entered guilty pleas to charges of committing indecent acts upon two male children who were under 16 years of age, violations of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a dishonorable discharge, confinement for 4 years, and reduction to airman basic (E–1). He appeals his sentence and requests a rehearing based upon a claim that

THE MILITARY JUDGE ERRED WHEN HE ALLOWED THE GOVERNMENT, OVER DEFENSE OBJECTION, TO INTRODUCE INTO EVIDENCE ADMINISTRATIVE CONCERNS ABOUT CONFINEMENT CRITERIA AND REHABILITATION PROGRAMS AT FT. LEAVENWORTH, KANSAS.

After a careful review of the pleadings and the record of trial, it becomes apparent that appellant's claim of error is somewhat misleading. To begin with, the Government did not "introduce" evidence in the classical sense. Rather, the claimed error came about as a result of individual defense counsel's direct examination of an expert in family psychology, who was called by the defense and testified as follows:

Q. Do you have an opinion as to whether ... Sergeant LaPeer is a good candidate for rehabilitation?

A.  Yes, I feel he is a good candidate for rehabilitation; he is motivated to participate in treatments; he is significantly distressed by the events which occurred. Both of those together—he's an intelligent person; he is well able to express himself—those put together suggest that he would be a good candidate for rehabilitation.

Q.  Do you have a[n] opinion as to whether ... confinement would have a beneficial or detrimental impact on that rehabilitative process?

A.  Being aware of the problems which are presently occurring within our penal system, and also not being sure where this particular person may go, if indeed he is sentenced to confinement, I would suggest that confinement may do more harm than good.

Facing this expert opinion, trial counsel cross-examined the witness about his knowledge of the rehabilitative programs available at the U.S. Disciplinary Barracks, Fort Leavenworth, Kansas. Over timely objection, trial counsel was permitted to ask:

Q.  Do you have any knowledge of what kind of sex offender counseling program they have at the US Disciplinary Barracks?

The witness replied:

A.  Yes, I'm aware that it is a very good program. I'm not completely aware of all the details of this program, but a social worker who has just recently left here, who I worked closely with for a year, told me that it was a very good program, and he had worked there for three years. He actually described it as one of the best in the nation.

---

\* In *United States v. Murphy,* 26 MJ 454, 457 (CMA 1988), referencing *United States v. Griffin,* 25 MJ 423 (CMA), *cert. denied,* —— U.S. ——, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988), we observed that an accused should be sentenced without regard to the collateral administrative conse-

■ Placing these questions in this perspective negates a finding that the military judge abused his discretion by permitting trial counsel to ask them. Whether proper counseling programs would be available at Fort Leavenworth during confinement and, if so, whether those programs would be accessible to appellant were matters that clearly were collateral consequences of the sentence awarded.

Nevertheless, the door to this probative cross-examination was opened by individual defense counsel when he attempted, through the expert witness, to persuade the court-martial members that appellant should not be sentenced to confinement because he would not be able to receive proper rehabilitative therapy while he was incarcerated. Trial counsel's cross-examination established, on the record, not only that appellant would have access to competent therapy at Fort Leavenworth, but also that he would be participating in a program that even the expert witness had heard was "one of the best in the nation." When observed from this standpoint, it is clear that trial counsel's questions were intended to impeach the inferences to be drawn from defense counsel's direct examination. That is what good cross-examination is all about. *Cf. United States v. Gambini,* 13 MJ 423, 428 (CMA 1982). Nothing here, however, should be read as changing the long-standing rules regarding "collateral consequence" evidence.\*

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

quences of the sentence in question. *Accord United States v. Quesinberry,* 12 USCMA 609, 31 CMR 195 (1962). Therefore, ... the military judge's rulings excluding this evidence were within the bounds of his discretion.