UNITED STATES, Appellee,

v.

Private E2 Marty K. GRADY, 463–61–0503, United States Army, Appellant.

ACMR 8900173.

U.S. Army Court of Military Review.

25 April 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Timothy P. Riley, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Martin D. Carpenter, JAGC, Captain Mark E. Frye, JAGC, Captain George R. Johnson, JAGC (on brief).

Before MYERS, JOHNSON and NEURAUTER, Appellate Military Judges.

*Opinion of the Court*

NEURAUTER, Judge:

Appellant was convicted, pursuant to his pleas, by a military judge sitting as a general court-martial of uttering worthless checks (forty-one specifications) in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a (1982). The military judge sentenced him to a bad-conduct discharge, confinement for thirty months, and reduction to the grade of Private E1. By the terms of a pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for twenty-four months, and reduction to the grade of Private E1.

I

Appellant is correct in noting that the military judge failed to advise him of

his allocution rights as required by Manual for Courts–Martial, United States, 1984 [hereinafter MCM, 1984], Rule for Court–Martial [hereinafter R.C.M.] 1001(a)(3).[1] Appellant also correctly notes that the military judge improperly questioned appellant during his unsworn statement.[2] Although these actions by the military judge constitute error, we hold that, under the circumstances of this case, appellant has not been prejudiced as a result.

During proceedings in extenuation and mitigation, the appellant made an unsworn statement from the witness stand and also submitted several documents for the court's consideration which included: two signed statements and a stipulation of expected testimony attesting to appellant's good duty performance; several leave and earnings statements; several receipts showing that appellant made restitution on his own initiative; documents from the installation mental health activity which recommend that appellant be enrolled in a drug/alcohol rehabilitation program; and photographs of appellant's wife and child. In addition, in his affidavit (admitted by

this court as a government appellate exhibit), the trial defense counsel, Mr. Winand[3] states that he explained to appellant his allocution rights[4] during their first meeting and thereafter reviewed those rights and extensively rehearsed appellant in preparation for the unsworn statement.

The issue of any specific prejudice in this case must be examined in the context of the fact that the appellant responded to many questions posed to him by the military judge during the course of the unsworn statement. He asked the appellant more than thirty questions during the unsworn statement that covers nineteen pages in the record of trial.[5] Once again referring to Mr. Winand's affidavit, he states the following:

> During PVT Grady's unsworn statement, the military judge began asking questions. At first, I was taken by surprise and nearly objected. However, PVT Grady answered the first question without hesitation and we continued the statement. The next few questions proved that, tactically speaking, holding

1. R.C.M. 1001(a)(3) states that, "[t]he military judge shall personally inform the accused of the right to present matters in extenuation and mitigation, including the right to make a sworn or unsworn statement or to remain silent, and shall ask whether the accused chooses to exercise those rights."

2. R.C.M. 1001(c)(2)(C) provides:
The accused may make an unsworn statement and may not be cross-examined by the trial counsel upon it or examined upon it by the court-martial. The prosecution may, however, rebut any statements of facts therein. The unsworn statement may be oral, written, or both, and may be made by the accused, by counsel, or both.

3. Formerly a captain in The Judge Advocate General's Corps.

4. Mr. Winand, in his affidavit, states that after consideration of several factors, to include the fact that if appellant made a sworn statement during extenuation and mitigation, he would probably be cross-examined concerning other crimes, he advised appellant to make an unsworn statement. As part of that advice, he reminded appellant "... that neither trial counsel nor the military judge would be permitted to ask (appellant) questions." We also note that appellant, in his affidavit, states that he did not "recall a discussion" with Mr. Winand regarding

his allocution rights and that he did not understand his options in testifying during extenuation and mitigation.

5. Although not set out here verbatim, the military judge asked appellant questions pertaining to several different matters that appellant brought up during the unsworn statement: Whether appellant was intoxicated when he wrote the checks; if appellant's grandparents were "good" to him during the time he lived with them; what kind of drug problem appellant's father had (after appellant had mentioned that his father "had a bad drug problem"); at what age appellant first tried marijuana (after appellant stated that his first stepfather gave him the drug); what type of carpentry he worked at prior to entering the Army; when appellant's drug and alcohol problems became serious (appellant had stated he had "a bad problem with drugs"); questions about playing football in high school; general inquiries about appellant's family situation; and several questions about appellant's military service. Despite the trial defense counsel's decision to allow the military judge to continue with the questions throughout appellant's unsworn statement, we strongly discourage this practice in light of R.C.M. 1001(c)(2)(C) and the military judge's obligation to ensure that his fairness and impartiality are not questioned.

my objection was probably the best decision. The military judge was asking questions to clarify PVT Grady's statement and, more importantly, he was allowing me to "read" the way he was perceiving PVT Grady's unsworn testimony. The only question of substance that I recall the military judge asking was if PVT Grady was aware of the Army policy strictly prohibiting drug use. Ironically, this was one of my questions. Despite the fact that the military judge asked the question, PVT Grady answered it in nearly the same manner as he had during our practice sessions.

\* \* \* \* \* \*

After PVT Grady completed his unsworn statement, we returned to the counsel's table and I asked if he received the same favorable impression I had from the military judge's questions. He indicated that he had. I reminded him that the judge was not permitted to ask questions during an unsworn statement and told him my impression was that the questioning had not prejudiced the sentencing case. I did not object to the questioning for this reason and as I recall, PVT Grady acquiesced in this decision. I believe that such an objection is a tactical decision that the client must entrust to his lawyer. I made the decision not to object after weighing the consequences of objecting to the judge's conduct against the possibility of damage to the sentencing case from the questions and responses.

The case of *United States v. Williams*, 23 M.J. 713 (A.C.M.R.1986), is helpful in resolving this issue. There, we stated that even in the situation where the military judge omits entirely any reference to allocution rights during the proceedings, we would test for specific prejudice to determine if any relief would be warranted. It is clear to us from the evidence of the record of trial and from the sworn assertions of the trial defense counsel that the appellant understood, and in fact, exercised his allocution rights. We are satisfied that appellant suffered no prejudice as a result of the military judge's failure to advise him of his allocution rights or, under the circumstances, the fact that the military judge asked questions of appellant during the unsworn statement.

II

Appellant next asserts that the military judge committed prejudicial error in considering testimony of witnesses who gave their opinion as to whether appellant should be retained in the United States Army. *See United States v. Ohrt*, 28 M.J. 301 (C.M.A.1989).

The Court of Military Appeals in *Ohrt* expanded its opinion in *United States v. Horner*, 22 M.J. 294 (C.M.A.1986). While noting that opinion testimony offered under R.C.M. 1001(b)(5) [6] was intended to address an accused's character and potential, the court stated in *Horner* that such testimony which was based on the witness' view of the severity of the offense was not appropriate or helpful to the sentencing authority. *Id.* at 296. Given that, the court in *Ohrt* stated:

[T]he case, *sub judice*, demonstrates that there are several important issues left to develop. For example:

1. Who would be considered an appropriate witness to express an opinion concerning the accused's "rehabilitative potential"?

2. What foundation must be laid before the witness may express an opinion?

3. What is the scope of the opinion?

*Ohrt*, 28 M.J. at 303.

In considering those issues, we believe that, as a minimum, it must be established that any witness called to testify pertaining to R.C.M. 1001(b)(5) matters is familiar enough with an accused to have personal knowledge of his character, his performance of duty as a servicemember, and desire for rehabilitation; that such fa-

**6.** R.C.M. 1001(b)(5) states that, "(t)he trial counsel may present, by testimony or oral deposition in accordance with R.C.M. 702(g)(1), evidence, in the form of opinions concerning the ac- cused's previous performance as a servicemember and potential for rehabilitation. On cross-examination, inquiry is allowable into relevant and specific instances of conduct."

miliarity is clearly set out in the record; and that the witness shall not be permitted to express an opinion concerning the appropriateness of any particular punishment, including an opinion as to whether an accused should be punitively discharged. We of course fully concur with the Court of Military Appeals that "[t]he question of appropriateness of punishment is one which must be decided by the court-martial; it cannot be usurped by a witness." *Ohrt,* 28 M.J. at 305.

■ The case before us involves the testimony of two witnesses called by the government during the presentencing proceedings. First, appellant's battery commander, Captain (CPT) Hupe testified:

Q. During [the period of time CPT Hupe was appellant's commander], did you have an opportunity to form an opinion about Private Grady as an overall soldier?

A. Yes.

Q. And what is that opinion?

DC. Your Honor, I'm going to object to this point as an improper question under Rule for Court–Martial 1001.

MJ. Why?

DC. An overall soldier? I believe that evidence is admissible concerning opinions of duty performance and of potential for rehabilitation as specifically set out in the subsection of the rule.

MJ. Overruled.

Q. Could you please give me your opinion of his performance as an overall soldier?

A. As an overall soldier, Grady was a disaster. The amount of time it took the First Sergeant, his immediate NCO supervisors, and me just keeping up with his antics was phenomenal—off duty.

Q. Okay. Do you have an opinion as to his potential for rehabilitation?

A. In the Army, Grady has no potential for rehabilitation.

Q. Do you have an opinion as to whether he should be retained in the Army?

A. He does not need to be retained in the Army.

Prior to giving that opinion, CPT Hupe stated that he had been appellant's commander for almost one year, that he had observed appellant during that time at least "every couple of days" and more recently on a daily basis, that he would see him at formations and at work, and that he believed that appellant's duty performance was "satisfactory."

Appellant's first sergeant, First Sergeant (1SG) Richardson, also testified:

Q. Did you have an opportunity to form an opinion about him as an overall soldier?

DC. Your Honor, renew the objection for the record. [Referring to objection made during CPT Hupe's testimony].

MJ. Overruled.

Q. Did you have an opportunity to form an opinion about him as an overall soldier?

A. Yes, sir.

Q. And what was that opinion?

A. Poor, sir.

Q. Do you have an opinion as to the rehabilitation potential of Private Grady?

A. Yes, sir.

Q. And what is that opinion?

A. Extremely poor, sir.

Q. And do you have an opinion as to whether he should be retained in the US Army or not?

A. Yes, sir.

Q. And what is that opinion?

A. He should not be retained in the service, sir.

The witness stated that he had been appellant's first sergeant for six months, that he observed appellant both in garrison and in the field, that appellant was a "good soldier on duty," but that, overall, he believed appellant was a "poor" soldier.

We conclude that both these witnesses were in a position to render an opinion to the court concerning appellant's rehabilitative potential. Although less detailed than it could have been, the foundation laid for the stating of such opinions is sufficient to satisfy us that the battery commander and the first sergeant had an adequate knowledge of the appellant's "character and po-

tential." They informed the military judge as to the length of time they had known appellant, the frequency of their contact with him, and in general terms what type of contact they had had. We next turn to consideration of the scope of the opinions rendered by these two witnesses.

■ CPT Hupe testified that appellant had no rehabilitative potential and 1SG Richardson stated that appellant had "extremely poor" potential for rehabilitation. They both testified that appellant should not be retained in the United States Army. Trial defense counsel did not, however, object to that particular testimony but had lodged an earlier objection when the trial counsel asked the witnesses for their opinion of appellant as an "overall soldier." As this question concerned the appellant's "previous performance as a servicemember," it was permissible to ask it under R.C.M. 1001(b)(5) once the proper foundation was laid. Despite that, we hold that trial defense counsel's objection was at least sufficient to preserve the issue in this case. It was obvious that he was concerned with the scope of these witnesses' opinion testimony and, once overruled on the initial objection by the military judge, he probably concluded that further objections on that general issue would be fruitless. Trial defense counsel submitted the same objection during 1SG Richardson's testimony.

■ Although we conclude that the opinions expressed to the effect that appellant should not be retained in the Army were inappropriate and should not have been permitted by the military judge,[7] there was no prejudice in this case. Both CPT Hupe and 1SG Richardson were familiar with appellant and with his military character and duty performance. We may assume that the military judge, as the sentencing authority in this case, was fully aware of his role and would not be inappropriately influenced by this testimony. In addition, although ultimately a bad-conduct discharge was adjudged, there is more than

ample evidence to support that sentence given the severity of the offenses and the matters properly admitted in aggravation.

### III

■ Appellant also asserts that the military judge improperly considered a collateral administrative consequence in determining a sentence in this case. After announcing sentence, the military judge explained as follows:

A lot of misconduct in this case, as you well know. And a lot of it—of course, all of it stemming from cocaine use makes it doubly bad. But I wanted you to go to Fort Leavenworth, Kansas to the Army prison there. Because I think that even though you seem to have come to grips with your problem, I think that you need the sort of treatment and therapy they can give you there for this cocaine stuff, so that after you get out of there you can go about the rest of your life and not have that monkey on your back.

Although the evidence and circumstances presented by this case clearly support a lengthy period of confinement and the military judge may well have considered many other factors in arriving at the adjudged sentence, it was error for him to construct a sentence specifically in reliance upon the collateral matter of what drug treatment programs may be available at the confinement facility. *See United States v. Murphy,* 26 M.J. 454 (C.M.A.1988), *cert. denied,* — U.S. —, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989) (citing *United States v. Griffith,* 25 M.J. 423 (C.M.A.) *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886 (1988)). *See also United States v. Lapeer,* 28 M.J. 189 (C.M.A.1989) ("Whether proper counseling programs would be available at Fort Leavenworth during confinement and, if so, whether those programs would be accessible to [Sergeant Lapeer] were matters that clearly were collateral consequences of the sentence awarded").

---

7. It should also be noted that this case was tried in January, 1989, approximately six months pri-

or to the decision in *Ohrt.*

Given our determination that the military judge erroneously considered this collateral consequence of the sentence, we are not convinced that the appellant suffered no prejudice. However, we believe this can be remedied by reassessment of the sentence rather than ordering a rehearing thereon. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). We are satisfied that absent consideration of that issue, the appellant would have been sentenced to at least a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

### IV

We have also examined, in the context of what occurred during appellant's unsworn statement, the issue of whether appellant was denied effective assistance of counsel. We conclude that he was not.

The standards by which the effectiveness of counsel is to be evaluated by appellate courts are set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Applying those standards to the case now before us, we are convinced that trial defense counsel's performance was not deficient and that no errors prejudiced the defense to the extent that appellant was denied a fair trial. *Id.* at 687, 104 S.Ct. at 2064. We believe, as Mr. Winand states, that he made a tactical decision not to object to the military judge's questioning of appellant during the unsworn statement. Further, given the presumption of adequate representation, *see United States v. Dupas*, 17 M.J. 689 (A.C.M.R.1983), and the fact that, except in extraordinary circumstances, we will not second guess tactical decisions of trial defense counsel, we believe Mr. Winand's representation of appellant meets the requirements of *Strickland*.

Appellant personally asserts, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), that his sentence is excessive. We believe that the sentence, as reassessed by this court, is appropriate.

The findings of guilty are affirmed. We affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

Senior Judge MYERS and Judge JOHNSON concur.