# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39571**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Ryan M. VANVALKENBURGH**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 May 2020

————————————

*Military Judge:* Joseph S. Imburgia.

*Approved sentence:* Dishonorable discharge, confinement for 1 year, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. Sentence adjudged 20 June 2018 by GCM convened at Misawa Air Base, Japan.

*For Appellant:* Major Rodrigo M. Caruço, USAF; Joseph Grossman (civilian intern).[1]

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Anne M. Delmare, USAF; Major Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges*.

Judge KEY delivered the opinion of the court, in which Chief Judge J. JOHNSON and Judge POSCH joined.

————————————

---

[1] Mr. Grossman was a legal intern with the Air Force Legal Operations Agency and was at all times supervised by attorneys admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

―――――――――――――

KEY, Judge:

A military judge convicted Appellant, consistent with his pleas made pursuant to a pretrial agreement (PTA), of one specification of sexual abuse of a child in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b, and one specification each of possessing child pornography and violating 18 U.S.C. § 2423(e) by attempting to travel into the United States for the purpose of engaging in illicit sexual conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[2] A panel consisting of officer members sentenced Appellant to a dishonorable discharge, confinement for one year, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The sole sentencing limitation in the PTA was to not approve any confinement in excess of two years, and the convening authority approved the sentence as adjudged.

On appeal, Appellant raises one issue through counsel: whether the military judge erred in denying the Defense's challenge for cause against one of the members, Major (Maj) KP. Appellant personally raises three additional issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (1) whether the military judge erred in allowing trial counsel to elicit testimony regarding the availability of sex-offender treatment in confinement; (2) whether the military judge erred in denying a defense motion to suppress the fruits of a search;[3] and (3) whether a mandatory dishonorable discharge amounts to cruel and unusual punishment. We find no error that materially prejudiced a substantial right of Appellant and affirm the findings and sentence.

―――――――――――――

[2] All references in this opinion to the Uniform Code of Military Justice, Rules for Courts-Martial, and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[3] Appellant styled this issue as "the military judge's admission of text messages from Appellant to his friends and family impacted his decision to plead guilty," but his discussion of the alleged error indicates he takes issue with the military judge's suppression ruling, not the later admission of the text messages, which Appellant agreed to as part of a stipulation of fact. We have rephrased the issue accordingly.

## I. BACKGROUND

Appellant, then a 19-year-old Airman stationed at Misawa Air Base (AB), Japan, met PS online via social media in April 2016. PS, who lived with her parents in Alaska, held herself out as a 17-year-old. The two interacted frequently using social media and video conferencing software, and they described themselves as boyfriend and girlfriend, even though they never met in person.

Around July 2016, one of PS's friends sent Appellant a message telling him PS was 13 years old, not 17. Appellant confronted PS with this information, and PS admitted she was only 13.[4] Nevertheless, Appellant continued his online relationship with PS, which escalated to the two exchanging sexually explicit messages and nude pictures of each other.

In December 2016, Appellant—with the approval of PS's parents—purchased round-trip airline tickets for April 2017 for the purpose of meeting PS in person. Separately, Appellant and PS discussed their plans to engage in sexual conduct during the trip.[5] One of Appellant's friends learned of the upcoming trip and alerted military law enforcement who apprehended Appellant the day before his flight to Alaska was scheduled to leave. Appellant confessed to sending and receiving both sexually explicit messages and nude images with respect to PS, some of which were later found on Appellant's phone.

Appellant sought to suppress his statements to law enforcement agents, as well as evidence derived from searches of his Facebook account, his cell phone, and his laptop computer. Amongst the evidence found on the laptop were messages between Appellant and his friends and family about his relationship with PS. The military judge denied these motions, and Appellant subsequently entered into a PTA in which he agreed to, *inter alia*, plead guilty and "waive all waivable motions." After the military judge accepted Appellant's guilty plea and found him guilty of the three specifications he was charged with, Appellant was sentenced by officer members.

---

[4] PS was 15 years old at the time of trial.

[5] Appellant was 20 years old (and PS was 13 years old) at the time of the intended trip.

## II. Discussion

### A. Challenge for Cause of Maj KP

Appellant argues the military judge erred in denying his challenge for cause against one of the members detailed to his court-martial, Maj KP.

#### 1. Additional Background

Twelve members were detailed to Appellant's court-martial, including Maj KP and Captain (Capt) AC. During voir dire, Maj KP disclosed he had been a member on a court-martial with similar offenses about a year prior, and that he had worked with the assistant trial counsel about twice a month in a contracting capacity and would see him at the gym on a daily basis. Capt AC disclosed that she was a sexual assault response coordinator (SARC), and had performed that role at various command levels and installations, working with "countless victims of adult sexual assault."

Trial defense counsel challenged Maj KP and two other members for cause, but did not challenge Capt AC. The military judge denied the challenge of Maj KP, but granted the other two challenges. Trial defense counsel exercised their peremptory challenge against Maj KP, then stated they "just wanted to put on the record" some information regarding their member selections. They explained, "to the extent that conventional wisdom says that the defense should not have SARCs on the panel, we've considered that and have nevertheless chosen not to use a peremptory on [Capt AC], or challenge her for cause, and our client was involved in that decision."

Now on appeal, Appellant argues the military judge's decision not to grant the challenge of Maj KP put the Defense in the "untenable position" of deciding whether to use his peremptory challenge against Maj KP or Capt AC, who had substantial experience working with sexual assault victims. Appellant contends his trial defense counsel faced the choice of using his peremptory challenge against Maj KP, thereby precluding appellate review of the challenge for cause, or peremptorily removing Capt AC, thereby risking a complaint of ineffective assistance from Appellant for not removing Maj KP, whom counsel felt strongly enough about to challenge for cause in the first place.

#### 2. Law

Under Rule for Courts-Martial (R.C.M.) 912(f)(4), "When a challenge for cause has been denied[,] the successful use of a peremptory challenge by either party, excusing the challenged member from further participation in the court-martial, shall preclude further consideration of the challenge of that excused member upon later review." Since R.C.M. 912(f)(4) was amended in 2005, the use of a peremptory challenge to remove a member from the panel

has operated to preclude appellate review of the ruling on an earlier challenge for cause of that member. *See United States v. Spear*, No. ACM 38537, 2015 CCA LEXIS 310, at *12–13 (A.F. Ct. Crim. App. 30 Jul. 2015) (unpub. op.).[6]

### 3. Analysis

By exercising his peremptory challenge against Maj KP, Appellant precluded our review of the denial of his challenge for cause pursuant to R.C.M. 912(f)(4). Appellant asserts he faced a difficult choice in deciding whether to remove Maj KP with a peremptory challenge or to preserve the challenge for cause for appellate review by removing Capt AC instead. "A hard choice is not the same as no choice." *United States v. Martinez-Salazar*, 528 U.S. 304, 315 (2000). Moreover, we are not convinced Appellant faced as much of a dilemma at trial as he would now have us believe. First, Appellant did not challenge Capt AC for cause. Second, his trial defense counsel explained for the record that they had purposely chosen—after consulting Appellant—not to challenge Capt AC either peremptorily or for cause, which strongly indicates that even if the challenge of Maj KP had been successful, Appellant still would not have attempted to remove Capt AC. Based upon the record before us, Appellant's counsel made the calculated decision to exercise his peremptory challenge on Maj KP and not on Capt AC, after consultation with Appellant, and has, as a result, precluded our review of the military judge's ruling.

## B. Testimony Regarding Sex-Offender Treatment in Confinement

Appellant argues the military judge erred in permitting trial counsel to elicit evidence of the availability of sex-offender treatment in military confinement facilities. We agree. We do not agree, however, with Appellant's argument that such error warrants setting aside either the findings or the sentence.

### 1. Additional Background

Trial defense counsel sought to convince the members to sentence Appellant to little or no time in confinement. Their approach was, first, to have the Defense's psychologist, Dr. S, testify as to Appellant's low risk of re-offending and safeguards that could be put in place to help guard against re-offense.

---

[6] Prior to 2005, the denial of a challenge for cause of a member who is ultimately removed by a peremptory challenge could be preserved for appeal if trial defense counsel explained on the record that the peremptory challenge would have been used on a different member but for the denied challenge for cause. *See United States v. Leonard*, 63 M.J. 398, 402–03 (C.A.A.F. 2006).

Second, they argued Appellant would return home where his father could implement those safeguards, so confinement was not needed to deter future misconduct by Appellant. Third, they demonstrated PS's parents neither perceived PS had been harmed in any way nor believed harsh punishment was warranted.[7]

Dr. S, who was recognized by the military judge as an expert in forensic psychology and the recidivism risk of sexual offenders, recommended Appellant receive sex-offender-specific counseling, have his Internet access either monitored or disallowed, and have only limited supervised contact with adolescents. During cross-examination of Dr. S, trial counsel sought—over defense objection—to elicit Dr. S's view on whether or not Appellant could obtain counseling while in confinement. In an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, outside the presence of the members, trial defense counsel argued that discussing counseling in military confinement facilities would be misleading due to the PTA's two-year confinement limitation essentially rendering Appellant ineligible for participation in the treatment programs.[8]

Dr. S explained to the military judge that his understanding was that counseling was typically not offered to anyone in military confinement if they were sentenced to less than 36 months. He said the confinement facilities could make exceptions on case-by-case bases, but such exceptions were unlikely due to the military programs both facing overwhelming demand and preferring participants have a sufficient sentence in order to complete the entire program. Dr. S also noted sex-offense counseling was no longer offered at the Naval Consolidated Brig in Charleston, South Carolina.

The military judge asked Dr. S, "Is there a possibility for sex offender counseling to occur in a [Department of Defense (DoD)] confinement facilities [sic] and, if yes, can it start in confinement and then continue in the outside world? Is there even a possibility?" Dr. S, who was neither part of the military nor affiliated with military confinement facilities, answered, "There—there is a possibility." Trial defense counsel asked Dr. S whether a particular military confinement facility would allow someone to start counseling without a long enough sentence. Dr. S began to explain his understanding of the facilities' preference that people complete the entire program in-house when

---

[7] The Defense introduced a letter from PS's mother that said she did not support Appellant's prosecution at all.

[8] Presciently, trial defense counsel noted, "It's the counseling that to me gets very, very messy very, very fast if we start to introduce evidence about counseling in confinement."

the military judge interrupted him and said, "and doctor, I'll probably cut you off there. Because really all that matters is 'if it's possible.' It's possible on the outside; it's possible on the inside."

Trial counsel referred to an affidavit, later attached to the record as an appellate exhibit, which explains counseling was available at two military confinement facilities: Naval Consolidated Brig at Miramar, California, and the United States Disciplinary Barracks at Fort Leavenworth, Kansas. The affidavit notes the sex-offender treatment program is generally unavailable to any inmate with a sentence less than 31 months, and that a person with a sentence between 21 and 31 months could only participate in the program "if they voluntarily agreed to hold good conduct time in abeyance." The affidavit describes inmates with a sentence of 20 months or less as "ineligible" for the treatment program.[9] The affidavit also notes that where inmates are confined "depends on several factors," and that members sentenced to 12 months or less would be confined in a local facility or a civilian confinement facility, rather than at one of the military facilities offering the treatment program.

After this discussion, the military judge remarked, "we're way down in the weeds on collateral matters to begin with," and then told Dr. S: "I'm going to limit your response to: 'Yes, it's possible for an individual to receive [sex offender] counseling in a DoD confinement facility. . . . regardless of how long confined. It's also possible to start and then continue in a civilian jurisdiction.'" After some additional discussion, the military judge said, "I'm not going to allow you to elaborate on how likely or unlikely or how possible it might be. It's just going to be: 'Is it possible, yes or no?'" The military judge asked the parties, "do counsel agree that you want all this stuff to come in?" Trial counsel answered in the affirmative, while trial defense counsel said, "Well, no I don't want it in. That's why I objected, but I understand your ruling." The military judge did not place a Mil. R. Evid. 403 analysis on the record.

Once the members returned to the courtroom, trial counsel resumed cross-examining Dr. S, asking him whether the services he had recommended Appellant obtain in the civilian community, including "sex offender treatment program sort of counseling," were also provided in military confinement facilities. Dr. S answered, "the counseling—the internet filter is not." Dr. S also agreed that services offered in confinement would be provided free of charge. On re-direct examination, Dr. S affirmed it was possible for a military member to start sex-offender treatment counseling in confinement and then con-

---

[9] They would, however, be eligible for a sex offender education program.

tinue the treatment after release. Later, the parties stipulated there are certified sex-offender counselors available in military confinement facilities.

In arguing to the members, trial counsel only briefly alluded to Appellant's ability to get treatment, saying, "Where is he going to get all of those steps? You heard from Dr. [S], the [DoD] has all of those things." Trial defense counsel, meanwhile, argued it was possible to start counseling in a military confinement facility and then complete it outside such a facility upon release, saying, "the evidence before you is that rehabilitation—his counseling can start immediately. The evidence before you is that it is possible to get it in a DoD confinement facility." In rebuttal, trial counsel again only alluded to counseling, saying,

> [Appellant] will get all of those things that Dr. [S] said he needed and he will get it for free. Again, it is up to him to take it but at least they are all there for him. The chaperone; the Internet; the unrestricted phone access—you don't have to worry if he would do that on his own because they would be there for him. . . . Now, in confinement—stipulated by the judge that all of these programs they exist. They exist free of charge to him for him to take advantage of, if he chooses to.

After counsel concluded their arguments, trial counsel requested the military judge instruct the members that sex-offender treatment programs in military confinement facilities "do exist and they are free of charge." The military judge declined this request, adding, "[t]here is no need to further muddy the water on this collateral issue."

According to documentation in the record of trial received by the court, Appellant was transferred to a local confinement facility on Misawa AB at the conclusion of his trial on 20 June 2018. On 6 July 2018, he was transferred to the Naval Consolidated Brig in Charleston, South Carolina. Neither of these facilities is identified as offering any sex-offender counseling services in the affidavit included as an appellate exhibit, and, according to Dr. S, the Charleston facility was no longer offering sex-offender treatment.

**2. Law**

We review "a military judge's decision to admit evidence for an abuse of discretion." *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018) (quoting *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)). Military judges abuse their discretion when their "factual findings are clearly erroneous, view of law is erroneous, or decision is outside the range of reasonable choices." *Id.* (citations omitted). In applying the Mil. R. Evid. 403 balancing test, military judges enjoy "wide discretion." *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (citations omitted). However, we give less deference

to military judges' decisions if they do not explain their analysis on the record, and we give military judges no deference when they fail to conduct the analysis at all. *Id.* (citations omitted).

If evidence is improperly admitted during sentencing proceedings, "the test for prejudice is whether the error substantially influenced the adjudged sentence." *Barker*, 77 M.J. at 384 (internal quotation marks and citation omitted). We evaluate the relative strength of the parties' cases along with the materiality and quality of the evidence in question. *Id.* (citation omitted). In determining whether an error had such a substantial influence, we consider:

> (1) the probative value and weight of the evidence . . .; (2) the importance of the evidence in light of other sentencing considerations . . .; (3) the danger of unfair prejudice resulting from the evidentiary ruling; and (4) the sentence imposed when compared to the maximum and to the sentence trial counsel argued for.

*United States v. Griggs*, 61 M.J. 402, 413 (C.A.A.F. 2005) (Crawford, J., concurring in part and dissenting in part) (citing *United States v. Saferite*, 59 M.J. 270, 274–75 (C.A.A.F. 2004)).

Military members "should be sentenced without regard to the collateral administrative consequences of the sentence in question." *United States v. Murphy*, 26 M.J. 454, 457 (C.M.A. 1988) (citation omitted). The availability of treatment and rehabilitation programs in confinement facilities and the time needed to complete them are among the collateral matters "normally off limits" to military judges and members considering an appropriate court-martial sentence. *United States v. Flynn*, 28 M.J. 218, 221 (C.M.A. 1989) (citing *United States v. Lapeer*, 28 M.J. 189 (C.M.A. 1989)) (additional citation omitted).[10]

### 3. Analysis

This case aptly demonstrates the wisdom of excluding collateral matters from the court-martial sentencing process. In permitting trial counsel to delve superficially into the availability of sex-offender treatment programs in military confinement facilities, the members were given the impression Appellant could voluntarily take advantage of such treatment should he be sen-

---

[10] *See also United States v. Smith*, No. ACM 38157, 2013 CCA LEXIS 1084, at *19 (A.F. Ct. Crim. App. 5 Dec. 2013) (unpub. op.) ("the availability of sex offender treatment in confinement still falls within the category of collateral matters that members should not consider in determining an appropriate sentence").

tenced to confinement. In reality, the availability of such treatment was dependent on the length of Appellant's confinement and at which facility he would be confined—neither of which the members had any information about. Based upon documentation in the record, it appears Appellant ultimately was housed in confinement facilities which did not offer sex-offender treatment programs at all. Further complicating matters, Appellant's PTA generally operated as a ceiling on Appellant's confinement, below which Appellant's ability to participate in such programs in military confinement facilities was non-existent unless he received an approved sentence of at least 21 months, was housed in one of two specific confinement facilities, *and* agreed to hold his good time in abeyance.

The military judge correctly identified the issue of this treatment as a collateral matter, and he pointed out that the court-martial had descended "way down in the weeds" on it. Despite this recognition, the military judge permitted Dr. S to comment on the possibility of treatment in military confinement facilities while simultaneously prohibiting Dr. S from elaborating on just how remote of a possibility it was unless Appellant received a qualifying sentence and was incarcerated at a facility offering such treatment.[11]

Although the availability of sex-offender treatment in penal institutions is typically impermissible sentencing evidence, it may be introduced in rebuttal. *See Flynn*, 28 M.J. at 222. The limited statement that treatment was "possible" in military confinement facilities, however, did not rebut any aspect of the Defense's case.[12] Instead, the statement suggested Appellant could avail himself of treatment in a military confinement facility despite the fact the affidavit in the possession of the parties and the military judge indicated that was not true. Dr. S explained, outside the presence of the members, that the treatment was no longer available at the Naval Consolidated Brig in Charleston. The fact Appellant could be confined at a local or civilian confinement facility was simply not addressed. This state of affairs demonstrates the wis-

---

[11] We note that if the members had received such information and wanted Appellant to obtain treatment in confinement, they very well may have adjudged a lengthier sentence to effect that goal.

[12] In *Flynn*, the defense had introduced evidence "suggesting that incarceration for child molesters at the United States Disciplinary Barracks, Fort Leavenworth, or any other penal institution was not appropriate." 28 M.J. at 221–22. In addition to taking judicial notice of the treatment program at that facility, the military judge in *Flynn* explained to the members the different confinement facilities in which the accused could be incarcerated, the sentence required for each, and the availability of the treatment programs in those facilities.

dom of our sister court's assessment that the "potential for participation in a treatment program while confined is precisely the sort of variable that is not susceptible to proof at trial and generally should not be considered in arriving at an appropriate sentence." *United States v. Flynn,* No. 20061309, 2008 CCA LEXIS 549, at *17 (A. Ct. Crim. App. 31 Oct. 2008) (unpub. op.) (citation omitted). The admission of evidence as to the collateral issue of the "possibility" of treatment in military confinement facilities was an abuse of discretion.

Despite this error, we see no basis for setting aside the findings in this case, as Appellant requests, and we conclude from our analysis using the four-part test from *Griggs* that the error did not substantially influence the adjudged sentence. The probative value and weight of the evidence was low in light of the military judge's sharp limitation of the amount of information actually admitted for the members' use. As admitted, the evidence was more misleading than probative of any fact in issue. Trial counsel—likely cognizant of the low probability of Appellant actually being eligible for any in-confinement treatment due to the PTA limitations—did not attempt to capitalize on the treatment issue, only alluding to the availability of counseling by generalizing about "all of those things" Dr. S recommended and "all of these programs" available in confinement. Thus, trial counsel diminished the weight the members should give the information. Even then, trial defense counsel correctly pointed out to the members they had received no evidence Appellant would actually receive any treatment in military confinement. Considering the Defense's focus on rehabilitation and the absence of victim-impact evidence, the availability of treatment was an important consideration for sentencing purposes. Yet, the danger of unfair prejudice in admitting evidence of treatment merely being "possible" in confinement was low, especially after trial defense counsel correctly explained there was no evidence Appellant could take advantage of any such treatment, relegating the concept of treatment in Appellant's situation to the realm of speculation and conjecture. The members sentenced Appellant to one year of confinement, in spite of trial counsel's request he be sentenced for three years—demonstrating the members discounted trial counsel's argument that Appellant needed a longer period of confinement. Considering Appellant faced 55 years in confinement, the much lower sentence he received indicates the error did not influence the sentence the members adjudged. Although the military judge erred, we conclude the error did not substantially influence the Appellant's adjudged sentence, and he is not entitled to relief.

## C. Ruling on Suppression Motion

Appellant argues he was prejudiced by the military judge's denial of one of his suppression motions, specifically the motion to suppress evidence seized from his laptop computer. He argues that had the military judge sup-

11

pressed messages sent between Appellant and his family and friends, that "very likely would have affected Appellant's decision to plead guilty." We are convinced such a ruling would have been a consideration in Appellant's determination of how to plead, but we are likewise convinced Appellant waived our review of this issue.

Appellant not only entered an unconditional plea, he agreed as part of his PTA to "waive all waivable motions," and he discussed with the military judge his understanding of this waiver and its impact on his ability to have appellate courts review the rulings on his various motions, including the suppression motion pertaining to his laptop. Some of the messages between Appellant and his family and friends were attached to the stipulation of fact accompanying Appellant's guilty plea in which Appellant expressly agreed: to "waive[ ] any objection he may have to the admission" of the facts in the stipulation; the stipulation attachments were admissible; and to "waive[ ] any objection based on hearsay, authentication, lack of foundation, or other potential objections to the introduction" of the attachments.

In general, an "unconditional plea of guilty waives all nonjurisdictional defects at earlier stages of the proceedings." *United States v. Hardy*, 77 M.J. 438, 442 (C.A.A.F. 2018) (quoting *United States v. Lee*, 73 M.J. 166, 167 (C.A.A.F. 2014)) (additional citations omitted). Appellant went farther, expressly disavowing his right to have the ruling on the suppression motion reviewed on appeal. Based upon the foregoing, we conclude Appellant has intentionally relinquished his rights with respect to appellate review of this matter. *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). We have assessed the entire record, considered our obligations under Article 66(c), UCMJ, and determined we will leave Appellant's waiver intact. 10 U.S.C. § 866(c); *see United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016).

**D. Whether a Mandatory Dishonorable Discharge is Unconstitutional**

Appellant was sentenced to be confined for one year, reduced to the grade of E-1, reprimanded, and dishonorably discharged, as well as to forfeit all of his pay and allowances. Appellant personally argues on appeal that a mandatory dishonorable discharge amounts to cruel and unusual punishment.

Under Article 56(b), UCMJ, 10 U.S.C. § 856(b), an enlisted person convicted of certain offenses must receive a dishonorable discharge as part of his punishment. These offenses include rape and sexual assault of a child under Article 120b(a) and (b), UCMJ. Appellant, however, was not convicted of either of these offenses—he was convicted of committing sexual abuse of a child under Article 120b(c), to which the mandatory dishonorable discharge provision does not apply.

Not only was Appellant not subject to a mandatory dishonorable discharge by operation of law, we see nothing in the record of his trial suggesting that the parties believed a dishonorable discharge was a required part of Appellant's sentence or that the members were led to believe that was the case. In discussing the maximum sentence, both trial counsel and trial defense counsel stated on the record, in Appellant's presence, that there was no mandatory minimum sentence in this case. During voir dire, both the Government and Defense brought up the members' options of sentencing Appellant to a dishonorable or a bad-conduct discharge. The military judge discussed Appellant's PTA with him, including a provision in which Appellant agreed to waive discharge board proceedings should he not be sentenced to any punitive discharge at all. Appellant told the military judge he understood that provision.

Beyond simply understanding the different sentencing options available to the members with respect to a punitive discharge, Appellant affirmatively asked the members to adjudge a dishonorable discharge after discussing the matter with the military judge. During that discussion, which occurred prior to trial defense counsel's sentencing argument, the military judge asked Appellant if he understood that the members "can adjudge not only a dishonorable discharge, but also a bad conduct discharge," to which Appellant answered in the affirmative. The military judge further explained Appellant might not receive a punitive discharge at all, and that in that case the provisions in his PTA regarding administrative discharge proceedings would control. Appellant said he believed a dishonorable discharge would be appropriate in his case, and trial defense counsel told the military judge, "if this case had been charged a little bit differently on very similar facts, a dishonorable discharge would be mandatory, so that's what he was trying to say when he said it would be appropriate." Finally, the military judge instructed the members they could adjudge a dishonorable discharge, a bad-conduct discharge, or no punishment at all.

Since Appellant did not face a mandatory dishonorable discharge, this alleged error is without merit and warrants no relief. To the extent Appellant's argument is actually one of sentence severity, we have considered Appellant; the nature and seriousness of his admitted offenses; his record of military service; and all matters contained in the record of trial, to include his case at trial and the matters he submitted in clemency.[13] We conclude the approved sentence, including a dishonorable discharge, is not inappropriately severe.

---

[13] *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015).

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court